UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TERESA BAUMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:12 CV 233 DDN |
| ) | |
| CAROLYN W. COLVIN,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM**

This action is before the court for judicial review of the final decision of defendant Commissioner of Social Security denying the application of plaintiff Teresa Bauman for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, et seq. and for social security income under Title XVI, 42 U.S.C. § 1381, et seq. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the court affirms the decision of the Administrative Law Judge (ALJ).

**I. BACKGROUND**

On November 3, 2008, plaintiff filed her applications, alleging she became disabled on October 9, 2008, when she was 39 years old. (Tr. 77-81.) She alleged disability due to complex multiple fractures in her hip and leg, retraumatization of a past neck injury, two bone fusions, bulging discs, chronic pain, a collapsed lung, pending lung removal surgery, arthritic hands, and respiratory failure. (Tr. 108.) Her claims were denied initially and after a hearing before an ALJ. (Tr. 12-21, 22A-22B, 27-32.) On December 15, 2011, the Appeals

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. The court hereby substitutes Carolyn W. Colvin as defendant in her official capacity. F.R.Civ.P. 25(d).

Council denied plaintiff's request for review. (Tr. 1-4A.) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. MEDICAL AND OTHER HISTORY

Plaintiff was treated by Daniel P. Windsor, M.D., from September 2007 through June 2008 for opiate addiction and chronic pain. (Tr. 318-29.)

Plaintiff saw Kenneth R. Killian, M.D., on April 3, 2008, for migraine headache management, back discomfort, and mood problems. She had been using crack cocaine and had been in a drug recovery home for over one month. She complained of fatigue, jerking spells, hair loss, dizziness, a vibration sensation over her chest, headaches, neck discomfort, swelling in her hands, and stress. She was diagnosed with irregular menstrual cycle, headache, backache, and contributing stress. She was encouraged to cease her drug use and to quit smoking. Dr. Killian prescribed Lexapro, an antidepressant. (Tr. 586-87.)

Plaintiff was involved in a head-on motor vehicle collision on October 9, 2008. She was treated in the Intensive Care Unit (ICU) at St. Johns Mercy Medical Center and diagnosed with right hip dislocation, a right acetabular (hip socket) fracture, right patellar (knee) fracture, and rib fractures. Her past surgical history included fracture of her cervical spine and was status post fusion. She had a staph infection in her ear at the time of admission and was taking an antibiotic. She was instructed to be non-weight bearing with rest and would require surgery. She was an IV drug user. After transferring out of ICU, she remained hospitalized. She participated in therapy and required a significant amount of assistance. (Tr. 151-152.)

On October 20, 2008, plaintiff underwent open reduction with internal fixation[1] (ORIF) of the right knee. On November 17, 2008, she

---

[1] An open reduction and internal fixation (ORIF) is a type of surgery used to fix broken bones. It is a two-part surgery. First, the broken bone is reduced or put back into place. Next, an internal fixation device is placed on the bone; this can be screws, plates, rods, or pins

-2-

underwent ORIF of the right hip socket fracture. Tests showed no evidence of deep vein thrombosis of either lower extremity. She was discharged from the hospital on November 21, 2008. (Tr. 149, 170-174, 244, 272-279.)

Plaintiff was seen at St. Johns on November 26, 2008 with complaints of right knee swelling. She had run out of pain medication and was prescribed medication. (Tr. 304-14.)

Chest x-rays dated December 11, 2008 revealed hyperinflated lungs with severe emphysematous changes in the upper lobes. There was small air fluid level in the left apex, which could represent fluid and gas in the pleural cavity. (Tr. 333.)

On December 18, 2008, a psychiatric review technique was performed by Kyle DeVore, Ph.D.. He concluded that plaintiff had a substance addiction (opiate) disorder which he described as a non-severe mental impairment. He opined that plaintiff had mild degree of limitation in restriction of activities of daily living, and that she had no other functional limitations. (Tr. 335-45.)

On December 19, 2008, two months after her car accident, her doctor stated she was doing "remarkably well." She was walking with a walker without any weight on her right lower extremity. (Tr. 349).

Plaintiff was seen for follow-up on January 13, 2009 and complained of swelling in her right lower extremity and pain in her knee. She stated that pain wakes her up at night. She was instructed to begin physical therapy, to bear weight as tolerated using a walker, and to follow-up in 6 weeks. X-rays of her right knee and pelvis showed normal healing. (Tr. 354-55, 369.)

On January 22, 2009, Donald Pfleger performed a Physical Residual Functional Capacity (RFC) assessment on behalf of the Agency. He indicated that given plaintiff's recent healing and continued

---

used to hold the broken bone together. This surgery is done to repair fractures that would not heal correctly with casting or splinting alone. http://www.bidmc.org/Your_Health/Medical_Procedures (last visited December 12, 2012).

improvement, his RFC assessment was "projected" for October 9, 2009, at which time plaintiff should be capable of the following limitations. Plaintiff would be capable of occasionally and frequently lifting 10 pounds, sitting about 6 hours in an 8-hour work day, and standing and/or walking at least 2 hours in an 8-hour workday. He believed that plaintiff could perform postural activities occasionally, but could never balance or climb ladders, ropes, or scaffolds. (Tr. 358-63.)

X-rays of plaintiff's pelvis and right knee taken March 5, 2009 revealed that her fractures were healing. (Tr. 378.) During an April 7, 2009 follow-up, six months after her accident, plaintiff reported right hip and knee pain. She had no tenderness and equal range of motion (ROM) in her joints. X-rays showed that her fractures were healed and that she had no hardware damage. She was given another prescription for physical therapy. She had been attending physical therapy only one day per week for the past six weeks because she did not have transportation. She was instructed as to the importance of continuing ROM and strengthening exercises. (Tr. 384-86.)

During a June 9, 2009 appointment, plaintiff complained that the hardware in her knee was causing her pain in her right knee and that at times she had right hip pain with activity. She used a cane when outside the home. June 22, 2009 x-rays showed a normally healed pelvis with satisfactory alignment and healing of her fractures. She was scheduled for surgery in two weeks to remove the hardware from her right knee. (Tr. 392-94.)

On September 11, 2009, plaintiff was admitted to the Center for Life Solutions in Hazelwood, Missouri, for methadone treatment for heroin addiction. She admitted to a past history of heroin and other drug use, as well as using cocaine the day before. She reported that she started smoking cigarettes at an early age and currently smoked one pack per day. She also admitted to relapsing with pain pills and reported she had been in and out of drug treatment centers for a number of years and had taken methadone in the past. (Tr. 521-26.)

On October 22, 2009, plaintiff was seen at St. John's Mercy Medical Center for right knee pain and surgical removal of the hardware in her knee. Notes state that she was initially scheduled to have the hardware removed, but due to personal reasons was unable to have it done. Upon exam, she had a passive full ROM. She had significant pain on extension of her knee. She had no pain with flexion. She had some mild arthritic changes in her right hip. The plan was to have the hardware removed on a future date. (Tr. 401-02.)

On November 9, 2009 plaintiff was seen in the emergency room (ER) of St. John's Mercy Hospital for a fall that had occurred one week earlier. The circumstances of the fall were not known, except that she had fallen from a standing position. Notes state that plaintiff was taking methadone and oxycodone for pain. Examination revealed tenderness in the sacral area and a quarter-sized hematoma on her right hip. She was diagnosed with a fall, contusion of buttocks, and hematoma. (Tr. 408-19.)

On November 18, 2009, the hardware in plaintiff's knee was successfully removed. (Tr. 402, 423.) The next day she was seen in the ER of St. John's Mercy for right knee pain and injury. She reported that the hardware in her knee had been removed earlier that week and that she had fallen out of bed several hours earlier and twisted her knee. Upon examination, she had tenderness but normal ROM. She was neurovascularly intact. One staple in her knee appeared to be altered. (Tr. 469-83.)

Plaintiff was seen November 25, 2009 for fever and myalgia or aches attributed to an abscess caused by IV drug injections in her right hand. She had normal strength and reflexes. The abscess was lanced and she was discharged. (Tr. 493-500.)

In December 2009 plaintiff was treated at St. Louis Metro Treatment Centers for drug abuse. (Tr. 531-538.)

**Testimony at the Hearing**

On January 29, 2010, plaintiff appeared and testified to the following at a hearing before an ALJ. (Tr. 603-40.) She is separated and has two children, ages 17 and 18. She lives in a ranch home with her parents. (Tr. 603-13.)

She began using heroin at age 27 and used for five years until she quit in 2002. She relapsed in June 2009 and used heroin until she quit again on November 2, 2009. She is on Step Four in the Narcotics Anonymous 12-step program. (Tr. 623-25.)

Her right knee hurts all of the time. She drops things constantly because her hands go numb three to four times per day. She can stand using a cane for about 20 minutes before her hip or knee starts to cramp. Her knee swells often, approximately a couple of days per week. She uses a heating pad for swelling. She has difficulty sleeping. She sleeps about two hours before pain wakes her up, at which time she must stand up to put pressure on her leg until the pain is relieved. She has hepatitis C which causes fatigue. She has difficulty lifting objects. She is prevented from performing a seated job because of cramping in her legs. She cannot stay in one position for very long, and once or twice a week she must stay in bed all day because her leg hurts in a burning way. Her hip also hurts because it is arthritic. She can walk about 15-20 feet before needing to stop. Taking a shower takes her a long time. Her mother drives her to the treatment clinic. She tries to help with household chores but cannot do much. She sometimes needs help getting dressed. (Tr. 626-35.)

Vocational Expert (VE) Jeffrey Magrowksi also testified at the hearing. The ALJ asked the VE to assume a hypothetical of plaintiff's age, education, and work experience who was limited to sedentary work. The individual was to refrain from jobs that require any kind of foot control operation and from climbing ladders, ropes, or scaffolds, or balancing. She was limited to occasional climbing of ramps or stairs, stooping, kneeling, crouching, and crawling. The individual was to avoid all moderate exposure to vibration, to operational control of moving machinery, to working at unprotected heights, or exposure to

hazardous machinery.  The VE testified that plaintiff could perform her past work as a telephone solicitor or telemarketer.

Under a second hypothetical, the individual had the same limitations as the first, except that the individual would require a sit/stand option once every hour.  Under a third hypothetical, the VE was to assume the same limitations but would require a sit/stand option every 30 minutes while remaining on task.  The VE testified that his answer under both hypothetical questions would remain the same.

Under a fourth hypothetical, the VE assumed the same limitations although the individual but would require a sit/stand option every 15 minutes and her right foot would need to be elevated during that time.  The VE testified that there were no jobs that the individual could perform without accommodation under that hypothetical.

### III.  DECISION OF THE ALJ

On April 14, 2010, the ALJ issued a decision that plaintiff was not disabled.  (Tr. 12-21.)  The ALJ found that plaintiff had not performed substantial gainful activity since October 9, 2008, her alleged onset date.  The ALJ found that plaintiff had the following severe impairments: residuals from an open reduction and internal fixation of the right patella (knee cap) and acetabulum (hip).  (Tr. 14.)  The ALJ found that plaintiff's GERD, headaches, and arthritis were not severe.  (Tr. 15-16.)  The ALJ found that plaintiff did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. part 404, subpart P, appendix 1.  (Tr. 14-15.)  The ALJ determined that plaintiff's (RFC):

> preclude[d] prolonged standing and walking and lifting and carrying more than ten pounds.  The claimant cannot use foot controls.  The claimant cannot balance and climb ladders, ropes and scaffolds. The claimant can only occasionally climb ramps and stairs. The claimant can only occasionally stoop, kneel, crouch or crawl. The claimant must avoid moderate exposure to vibration and all exposure to operation control of moving machinery.  The claimant must avoid working at unprotected heights and working around

-7-

>     hazardous machinery.  The claimant requires the
>     ability to alternate between seated and standing
>     positions every thirty minutes while remaining on
>     task.

(Tr. 15.)  The ALJ found that plaintiff's impairments would not preclude her from performing work that exists in significant numbers in the national economy, including work as a telemarketer.  Consequently, the ALJ found that plaintiff was not disabled.  (Tr. 21.)

## IV.  GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's final decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and is supported by substantial evidence in the record as a whole.  Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  Id.  In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision.  Id.  As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently.  See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months.  42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A); Pate-Fires, 564 F.3d 935, 942 (8th Cir. 2009).  A five-step regulatory framework is used to determine whether an individual qualifies for disability.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process); Pate-Fires, 564 F.3d at 942 (same).

Steps One through Three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment. Pate-Fires, 564 F.3d at 942. If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Id. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform his PRW. Id. The claimant bears the burden of demonstrating she is no longer able to return to his PRW. Id. If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work. Id.

## V. DISCUSSION

Plaintiff argues the ALJ erred (1) in failing to cite any evidence supporting his RFC determination, and that the determination was ultimately conclusory because there was no discussion of her ability to sit, stand, walk, lift, carry, push, or pull; and (2) in failing to indicate what weight was given to the evidence, including the state agency opinions.

**1. Residual Functional Capacity**

Plaintiff argues that the ALJ failed to cite any evidence supporting his RFC determination, and that the determination was ultimately conclusory because there was no discussion of her ability to sit, stand, walk, lift, carry, push, or pull. This court disagrees.

RFC is a medical question and the ALJ's determination of RFC must be supported by substantial evidence in the record. Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001); Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001); Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000). RFC is what a claimant can do despite her limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and a claimant's description of

her limitations. Donahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001); 20 C.F.R. § 416.945(a). While the ALJ is not restricted to medical evidence alone in evaluating RFC, the ALJ is required to consider at least some evidence from a medical professional. Lauer, 245 F.3d at 704. An "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at * 7 (Soc. Sec. Admin. July 2, 1996).

Here, the ALJ thoroughly discussed the medical evidence in his decision. He noted that other than plaintiff's six-week hospitalization for injuries from her October 2008 car accident, and related complications, the objective medical evidence did not support a finding that plaintiff was unable to perform all work activity. (Tr. 15-20.) Two months after her accident, plaintiff was doing "remarkably well." (Tr. 349.) By January 2009, she was being weaned off the use of a walker. (Tr. 17, 354-55.) X-rays of her right knee and pelvis showed normal healing. (Tr. 18, 369.) She began physical therapy, and by April 2009, six months after her injuries, she had no tenderness and equal ROM in her joints. (Tr. 18, 384.) She stopped attending physical therapy in April 2009, but returned for follow-up in June 2009. (Tr. 381, 393-94.)

X-rays at that time showed a normally healed pelvis with satisfactory alignment and healing of her fractures. (Tr. 18, 392.) "Impairments that are controllable or amenable to treatment do not support a finding of total disability." Pepper ex rel. Gardner v. Barnhart, 342 F.3d 853, 855 (8th Cir. 2003). Plaintiff developed complications from the hardware in her knee and surgical removal of the hardware was initially scheduled for June 2009. (Tr. 394). In the meantime, in September 2009, plaintiff began methadone treatment for heroin addiction. (Tr. 514-25.) Plaintiff's knee hardware was eventually successfully removed on November 18, 2009. (Tr. 18, 402, 423.) The following day, plaintiff was seen in the ER reporting after

falling and twisting her knee. On examination, she had tenderness but normal ROM, she was neurovascularly intact, her staples were in place, and there was no sign of infection. X-rays showed no fracture and some soft tissue swelling and knee joint effusion. (Tr. 471-74.) Plaintiff was seen one week later, on November 25, 2009, for fever and myalgia caused by an abscess caused by intravenous drug injections in her right hand. (Tr. 493, 498.) Plaintiff again had normal ROM and normal strength, sensation, and reflexes. (Tr. 496.)

In summary, the objective medical evidence shows that plaintiff's hip and knee fractures had responded to treatment and that she had regained full strength and ROM. Such evidence is inconsistent with plaintiff's reports of disabling symptoms. See Buckner v. Astrue, 646 F.3d 549, 558 (8th Cir. 2011).

The burden is on plaintiff to establish disability. See Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995). In this case, none of plaintiff's physicians ever indicated that she had disabling functional limitations, nor did any examining physician opine that plaintiff was disabled or unable to perform any type of work. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000)(lack of significant restrictions imposed by treating physicians supported the ALJ's decision of no disability).

The ALJ also noted that when plaintiff started her methadone treatment, she denied taking any prescription medications. (Tr. 19, 525.) Her failure to use any prescription pain medication at the same time she alleges disability due to severe pain weighs against a finding of disability. See Baker v. Barnhart, 457 F.3d 882, 893 (8th Cir. 2006)(claimant's decision not to take pain medication was a valid factor for the ALJ to consider).

The ALJ also found that plaintiff's work record weighed against her credibility. (Tr. 19.) From 1997 through 2008, when she alleged her disability began, plaintiff had five years with no reported earnings. (Tr. 19, 89.) She had another four years during this period when her total earnings for the year amounted to less than $4,000.00. (Tr. 19, 89.) Cf. Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir.

2001)(lack of work history may indicate a lack of motivation to work rather than a lack of ability); Woolf v. Shalala, 3 F.3d 1210, 1214 (8th Cir. 1993) (claimant's credibility is lessened by poor work history).

Finally, the ALJ considered plaintiff's long history of drug abuse. (Tr. 19.) Plaintiff's drug addiction is relevant because her case for disability rests in large part on the credibility of her subjective complaints. See Anderson v. Barnhart, 344 F.3d 809, 815 (8th Cir. 2003)(claimant's misuse of medications is a valid factor in an ALJ's credibility determinations); Anderson v. Shalala, 51 F.3d 777, 780 (8th Cir. 1995) (claimant's drug-seeking behavior further discredited her allegations of disabling pain).

Based on the evidence, the ALJ determined that plaintiff's subjective complaints were not credible, and that the credible record evidence supported only the limitations of her RFC as set forth above. Plaintiff points to no medical evidence that contradicts the ALJ's RFC determination. The record evidence showed that plaintiff's injuries responded well to treatment and that she sought little treatment for any other severe impairments during the relevant period.

Plaintiff further argues that the ALJ failed to complete a function-by-function assessment of her RFC. However, the ALJ is not required to provide each limitation in the RFC immediately followed by a list of the specific evidence supporting this limitation. See Social Security Ruling (SSR) 96-8p. As discussed above, the ALJ's decision makes clear that he considered all of plaintiff's alleged impairments thoroughly and in detail. The ALJ properly formulated plaintiff's RFC based on the credible evidence of record. See e.g., Gifford v. Astrue, 2010 WL 2953204 (W.D. Mo. 2010). Plaintiff's assertion that there is no discussion of her ability to sit, stand, walk, lift, carry, push or pull is contrary to the ALJ's RFC finding, which indicated that plaintiff could lift, and thus implicitly carry, push, or pull 10 pounds. (Tr. 15.) The ALJ also indicated that plaintiff would need to change positions between sitting and standing every 30 minutes. Thus, she could sit and stand for 30 minutes at a time and for roughly 4 hours

each during the course of an 8-hour workday. (Id.) A more precise articulation of her RFC was not necessary.

**2.   Weight of the Evidence**

Plaintiff next argues that the ALJ failed to state what weight he afforded to the record evidence, including the medical opinion evidence. As set forth above, in assessing plaintiff's RFC, the ALJ discussed a number of factors, including objective medical findings, plaintiff's treatment history, her ongoing substance abuse, her poor work history, and the absence of any opinions from her treating sources that she was incapable of working. To the extent plaintiff is suggesting that the ALJ is required to specify what weight is afforded to every piece of record evidence, there is no requirement in the regulations or case law that the ALJ do so; the regulations at 20 C.F.R. §§ 404.1527 and 416.927 apply only to medical opinions. The record also shows that the ALJ considered the opinion of State agency reviewing psychologist Kyle DeVore, Ph.D., who opined that plaintiff did not have a severe mental impairment. (Tr. 335.) The ALJ concluded, in light of Dr. DeVore's opinion and the record as a whole, that plaintiff did not have a severe impairment. Thus, the ALJ afforded significant weight to Dr. DeVore's opinion.

The only other opinion in the record was from a State agency single decision maker, who, as a single decision maker, was not an acceptable medical source, and therefore, his opinion was not afforded any weight by the ALJ. (Tr. 358-63.) See Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011)(the ALJ is not required to adopt the opinion of any medical source in determining RFC; ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians).

The record evidence demonstrates that plaintiff sustained serious injury in a car accident, but made a successful recovery. The objective findings did not suggest any long-term disabling limitations. Plaintiff sought infrequent treatment after she was released from the hospital.

-13-

Thereafter, she engaged in heroin and cocaine abuse, and also admitted to abusing narcotic pain medication, calling into question the legitimacy of her complaints of pain. None of her physicians ever opined that she had any long-term limitations. The ALJ determined that plaintiff was capable of performing a range of at least sedentary work and that she could return to her past work as a telemarketer. Based on the above, the ALJ's decision is supported by substantial evidence.

**3.     Severity of Plaintiff's Impairments**.

Plaintiff argues that the ALJ applied the wrong standard in determining that her migraines, arthritis, gastroesophageal reflux disease (GERD), depression, and neck pain were not severe impairments. She argues that instead of using the correct standard, the ALJ discussed why plaintiff's impairments do not meet one of the listing of impairments. The court disagrees.

A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to perform basic work activities without regard to age, education, or work experience. An impairment is not severe if it amounts to only a "slight abnormality" and does not significantly limit the claimant's physical or mental ability to do basic work activities. Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007). Basic work activities encompass the abilities and aptitudes necessary to perform most jobs. Included are physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, performing, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work situation. See 20 C.F.R. §§ 404.1521(b), 416.921(b).

The ALJ noted that plaintiff was diagnosed with several conditions, including headaches, cervical spine injuries, GERD, arthritis, and depression, but that record evidence revealed no ongoing treatment for any of these conditions. Nor were there any objective

findings supporting a finding that they were severe.  The ALJ also noted that plaintiff did not receive ongoing treatment for any of these conditions for at least 12 months, suggesting that they did not meet the duration requirement of the Social Security Act.  The ALJ also noted that the record evidence did not suggest that these impairments would impose more than minimal work-related limitations.  Moreover, plaintiff identified no such findings, simply contending that the ALJ improperly applied the standard for determining whether an impairment meets a listing.

The evidence considered for the Listings, however, is also considered at Steps Two and Four of the sequential evaluation process. For example, with respect to arthritis, in order to find it a severe impairment, the evidence would have to show medical signs and symptoms such as inflammation, limitation of motion, or degenerative joint changes.  Such evidence is also considered and evaluated under the Listings, which set forth the specific medical findings necessary to warrant a finding of disability at Step Three of the sequential evaluation process.  See 20 C.F.R. Part 404, Subpart P, Appendix 1, § 14.09.  The Listing can be satisfied if there is limited ROM of the spine or persistent inflammation that results in the inability to ambulate effectively.  See id.  Thus, inflammation and ROM are considered at Steps Two and Three.  The ALJ's observation that plaintiff's ROM was not significantly limited was a proper observation in finding that her arthritis was not severe.  This did not amount to the ALJ improperly applying an incorrect standard.

Plaintiff also argues, alternatively, that the ALJ failed to account for her non-severe impairments in his RFC determination.  The ALJ's RFC determination need only include those impairments and limitations found credible by the ALJ.  See Forte v. Barnhart, 377 F.3d 892, 897 (8th Cir. 2004).  As set forth above, plaintiff received no regular treatment for depression, arthritis, GERD, migraines, or neck pain during the relevant period.  For this and other reasons, the ALJ determined that plaintiff's subjective complaints were not credible.

-15-

Because the medical evidence did not suggest any significant work-related limitations due to these impairments, the ALJ was not required to account for them in his RFC determination.

## VI. CONCLUSION

For the reasons set forth above, the court finds that the decision of the ALJ is supported by substantial evidence in the record as a whole and consistent with the Regulations and applicable law. The decision of the Acting Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on March 18, 2013.